ROGERS, J.
 

 (concurring in part and dissenting in part). As stated in the majority opinion, I concur in the majority view that the plaintiffs as taxpayers have a right to judicially contest the expenditure of the funds of the state under the alleged unconstitutional legislative acts, but I dissent from the- majority view that the acts themselves are not unconstitutional. My opinion is that they are flagrantly unconstitutional in several particulars. The prohibitory clauses of the Constitution violated by the statutes are couched in words so plain and unambiguous that he who runs may read them.
 

 First. Act No. 143 of 1928, so far as it liurports to appz-opriate the
 
 sum of
 
 $750,000 for the purpose of free school books for the use of the school children of the state, is plainly violative of section 16 of article 3 of the state Constitution. The constitutional provision requires that every legislative act shall have but one object and shall have a title indicative of such object. There is nothing in the title to the statute under discussion which meets the constitutional requirement. The statutory title so far- as it is pertinent to the discussion reads: “An act making an appropriation to defray the ordinary expenses of government * *
 
 *;
 
 and’ to support
 
 public schools. * *
 
 *” (Writer’s italics.)
 

 The argument advanced in the majority .opinion overruling this contention of the plaintiffs is that the title to the act is similar to titles usually used in General Appropriation Acts in this state, and is sufficient to cause one to anticipate that upon investigation some such appropriation may be found in the body of the act.
 

 I admit that the title is similar to titles usually used in General Appropriation Acts, but I assert that no prior General Appropria
 
 *1026
 
 tion Act to which such title is appended contains an appropriation for the purpose of purchasing free school books for
 
 all
 
 the children of the state. Therefore, I respectfully suggest that the argument on the point in the majority opinion is inapplicable to the issue presented by plaintiffs’ contention. Nor can I agree with the majority view that the title “suffices to cause one to anticipate that, upon investigation, some such appropriations may be found in the body of the act.” Eor my own part, I think the title suggests the contrary view, namely, that it is such as to cause one to anticipate that, upon investigation, only appropriations for the support of the
 
 public schools
 
 will be found in' the body of the act. That is what the title in plain words says, viz.: “An act making an appropriation * * * to support the
 
 public schools.”
 
 (Writer’s italics.) Whatever else the title may indicate concerning the appropriations made by the statute for other purposes, so far as the appropriations for schools are concerned, it seems to me to be too clear for argument that the statutory title not only indicates but expressly declares that they are made for the support of the public schools, and for the public schools albne. This being the case, the appropriation by the statute for the purchase of free school books for the use of school children, meaning all school children in public, private, or sectarian schools, of the state goes far beyond the object set forth in the statutory title.
 

 Second. Act No. 143 of 1928, so far as the appropriation under review is concerned, is clearly violative of section 9 of article 4 of the state Constitution. The section and article provides:
 

 “The general appropriation bill shall embrace
 
 nothing but
 
 appropriations for the ordinary expenses of the government, pensions, the public debt and interest thereon,
 
 public schools,
 
 public roads, public charities and all State institutions.” (Writer’s italics.)
 

 A mere reading of the quoted provision discloses that, whether the appropriation be for all schools, public, private, and sectarian, or for the children of such schools, the item complained of by plaintiff is not for any of the purposes or objects enumerated therein. The item is therefore illegally incorporated into the general appropriation bill. The argument that the appropriation falls within the ordinary expenses of the government is, I respectfully suggest, unsound. Such expenses are merely those that are usually and customarily incurred in the regular administration of the governmental affairs. The appropriation in question is the first in the history of the state, so far as I am informed, that has been made by the Legislature to purchase school books for all the children of the state. It purports to dispose partially of a special fund (severance tax fund) created and levied by special laws. The appropriation, in my opinion, is therefore an unusual, and not a usual, one, and is not such an appropriation as has been customarily made to take care of the ordinary running expenses of the state government. If the position of the majority of the court, as expressed in the majority opinion, be correct, then the exceptions set .forth in the constitutional provision are superfluous and meaningless, with the single exception of appropriations for the ordinary expenses of government which would comprehend the other expenses enumerated. But the framers of the Constitution ex industria discriminated between the ordinary expenses of government and the other expenses that might be included in the general appropriation bill. Among these other expenses are the expenses for public schools. If the ex
 
 *1028
 
 penses for’ such schools were not intended by the framers of the Constitution to be included among the ordinary expenses of government, how can it be successfully contended that the expenses of all the schools of the state, necessarily including the public schools, may constitutionally be included among the ordinary governmental expenses? The question, I respectfully submit, answers itself. And the answer becomes more emphatic in the light of section 1 of article 12 of the Constitution, providing that the educational system of the state shall consist only of free public schools and all institutions of learning supported in whole or in part by public funds.
 

 ■ Third. Both statutes, Nos. 100 and 143 of 1928, clearly violate section 8 of article 4 and section 13 of article 12 of the state Constitution.
 

 Section 8 of article 4 contains two provisions prohibiting the withdrawal of funds from the state treasury for sectarian or private purposes, as follows, viz.:
 

 — “No money shall ever be taken from the public treasury directly or indirectly in aid of any church, sect or denomination of re- , ligion. * * *
 

 “No appropriation from the State Treasury shall be made for private, charitable or benevolent purposes to any person or community. * * *” ■
 

 Section 13 of article 12 reads as follows, vi
 

 \. “No public funds shall be used for the /support of any private or sectarian school.”
 

 'Tt does not require any extended reasoning to produce the conviction that to withdraw money .from the public treasury fo.r the purpose of purchasing books to be used in sectarian schools is to use such money “indirectly” if not “directly” in aid of the church, sect, or . religious denomination conducting the' schools. It. is obvious, also, that an appropriation from the state treasury for purchasing books to give or lend directly to all the school children, or indirectly to all the schools, of the state, is an appropriation for private or benevolent purposes.
 

 By section 13 of article 12, supra, the framers of the Constitution have deliberately established the public policy of the state concerning the disposition of its funds for school purposes. The language of the provision is clear and explicit, requiring no interpretation. Its intention is to preserve the school fund for the use of the public schools, by prohibiting the diversion of the fund, or any part thereof, for the support of any private or sectarian school. The wisdom and policy of the constitutional provision is no concern of the courts. Their function is confined solely to its enforcement.
 

 The four members of the court who think that the legislative acts, under review are constitutional attempt to avoid the effect of the quoted provisions of the Constitution by holding that they are inapplicable, because the appropriations are made for the purpose of purchasing books for the use of the school children, with a .resultant benefit to the state, and not for the schools themselves.' In my opinion, this holding is a mere begging of the question. The maintenance of private or sectarian schools, however valuable may be the work which they perform, is not a public purpose so as to justify the expenditure of the public money in their support. School books are as essential to the means of imparting instruction to the children as are other educational appliances, schoolhouses, and school teachers. But I do not believe that any one will contend for a moment that, in the face of the prohibitory clauses of the Constitution, money can be taken from the public treasury for the pur
 
 *1030
 
 pose of furnishing the children in private and sectarian schools with these necessary educational facilities. To say the least, the appropriation of the public funds for the purchase of books for all the school children of the state is an attempt to do indirectly that which cannot be done directly. The argument of resultant benefit to the state must and does fall before the rule of public policy established in the organic law itself that the welfare of the state can be best promoted by prohibiting appropriations from the public treasury in aid of any church, religious denomination, private charitable, or benevolent purpose, private or sectarian school.
 

 Fourth. Another and insuperable objection to the majority view that the statutes under attack are constitutional because they provide for supplying books to the children and not to the schools is to be found in section 12 of article 4 of the Constitution. That section, so far as pertinent to the issue, reads as follows, viz.:
 

 “The funds, credit, property or things of value of the state of of any political corporation thereof, shall not be loaned, pledged or granted to or for any person, or persons, association or corporation, public or private. * * * ”
 

 It is argued in the majority opinion that the constitutional provision is inapplicable to the case at bar, because the books are not granted or donated but only loaned to the children, which may be legally done in a reasonable exercise of the police power of the state. The statutes themselves do not provide for the return or .repossession of the books, nor for any indemnification of the state in the event they are lost, destroyed, or injured. But, he that as it may, the majority view necessarily admits that title to the books remains in the state; that they are property or things of value belonging to the state; and the constitutional provision which I have quoted in express words declares that as such they cannot be
 
 loaned
 
 to any
 
 person
 
 or
 
 persons.
 
 To say that the lending contemplated in the constitutional provision is not such a lending as will take place in case of the books supplied to the children of the state under the authority of the statutes herein attacked is, in my opinion, an inference wholly unwarranted by the language of the provision. Nor' is there any room here for the application of the state’s police, power. That power is not absolute and cannot be invoked to sustain legislative acts, which in their operation defeat the objects- and purposes of the organic law. As I see-it, the majority decision writes into the state Constitution a provision that was not incorporated into the original instrument by the framers.
 

 For the foregoing reasons, I think that the judgment appealed from should he annulled, and that the case should be remanded, with instructions to the district judge to issue the injunction prayed for by the plaintiffs.